All the facts pertinent to the points decided, are set out in the opinion of the Court.
The jury, upon the issues submitted to them by the presiding Judge, found a verdict for the plaintiffs. Judgment in accordance therewith, and appeal by defendant.
1. The Canal Law is unconstitutional. All lands in this country are held by tenure under the United States Government, and this secures to the land owner an estate free from all incumbrances, save those imposed upon it by the free will and act of the lawful owner thereof. 2 Kent, folio 240. By statute in this State, an estate in fee in the nature of an easement is created in the lands of A and given to B against the will of A. Rev. Code, folio 256. Private property cannot be interferred [interfered] with or condemned for private use. Hoke v. (635)Henderson, 15 N.C. 1; Davis v. Railroad, 20 N.C. 460; Reevesv. Treasurer of Wood County, 8 Ohio State Reps., folios 345, 346, 347; Am. Law Review, vol. 6, no. 2, folio 209. The statute impairs contracts, the titles by which land is held, and is therefore in violation of the United States Constitution, and also in violation of the 12th section of the Bill of Rights of this State, which says private property shall be held inviolate, subservient to public uses only.
2. As to the covenant, executed 29th of July, 1858. The canal nowhere touches any part of either the Newson Knight or Bearskin Swash land. Record, folio 23. The canal runs within 350 yards of the Knight land, being 400 acres, and within 30 feet of the Bearskin Swash land, being 50 acres. Record, folio 41. Court charged the jury that the covenant was a covenant real, running with the land, and the defendant was chargeable therewith. The canal not being on the lands in question, the covenant was thereby personal and ceased with the death of the covenantee, Lloyd. Wash. on Easements, folios 36, 217. Plaintiffs not being owners of the soil, cannot grant an easement. 3 *Page 512 
Kent, folio 346. The covenant is therefore void as against the defendant.
3. The covenant is contrary to the Drainage Act. Plaintiffs turn in other persons not parties to the original petition. See Record, folios 44 to 47, by agreement to which defendant was not a party, nor had he notice thereof. Record, folio 40. And lands other than those named in the original petition drained into the canal. The Knight and Bearskin Swash lands, and those draining into said canal, not being mentioned in the original petition, all lie on said canal, above the lands of this defendant. Record, folio 41. Party desiring to drain land into a canal must give notice to all persons owning land on the canal and make them parties to the petition in which he applies for the right, and the jury must say what damages are sustained by the parties below by reason of the additional water turned. Rev. Code, sec. (636) 9, folios, 256, 257. Covenant is therefore void.
4. If the easement of plaintiffs be valid, it is forfeited by allowing other parties to flow water into the canal. Record, folios 4, 9, 10. Thereby burdening the servient. Wash. on Easements, folios 627, 628.
These are the facts material for the present purpose as gathered from the pleadings and verdict.
In January, 1855, Eaton Cobb and the plaintiff Harrell were in the possession and use of a canal lying partly on their own lands and partly on the lands of others, of whom the defendant was one. It passed near to, but did not touch two pieces of land then belonging to one Gregory, which, upon his death descended to Lloyd, after whose death the defendant, purchased them from his devisees.
In 1855, the defendant owned certain lands, which he still owns, which lie below the lands of the plaintiffs, and at or near the mouth of the canal. The lands which he purchased from the devisees of Lloyd also lie below those of plaintiffs and are separated from the canal by intervening strips of land which, in 1855, belonged to the defendant, and still do. One of these strips is thirty feet and the other three hundred and fifty yards wide.
On January 25, 1855, Cobb and Harrell entered into a covenant with a number of other persons, by which these were allowed to drain into the canal several pieces of land, not mentioned in the proceedings in the County Court of Edgecombe, (presently to be mentioned more fully) *Page 513 
under which Cobb and Harrell acquired their right to the canal. This covenant provided that each party might determine what work was necessary at any time to be done on the canal, and he was empowered to do it, and the other parties were to pay their several shares of the expense, in proportions which were fixed. It also provided, on what terms other persons might be afterwards let in to the use (637) of the canal, for drainage. It expressly stipulated, that it should be binding not only on the parties themselves, but also on their heirs and assigns, quoad the lands specified in it. The defendant was no party to it.
On the 29th of July, 1858, the parties to the covenant of 1855, entered into a covenant with Lloyd, by which it was agreed, that he, his heirs and assigns, might drain his lands into the canal, provided it should not be entered at more than one point, by any ditch from one of the pieces of land. It provided that "all the rights and privileges, and all the burdens and duties conferred and imposed by the articles of agreement of January 20, 1855, shall be enjoyed and borne by the parties to the agreement of July 29, 1858," with certain alterations not material to the present purpose; it also provided, the proportion of work to be done on the canal by Lloyd, his heirs and assigns.
On the 10th of December, 1860, the devisee of Lloyd conveyed his lands, referred to in the covenant, to the defendant, to hold to him, and his heirs and assigns, with all the privileges, easements, appurtenances, rights, advantages, burdens, and encumbrances thereunto belonging and appertaining, c.
After this deed was made, the intestate of plaintiff, Norfleet, did some work on the canal, and after a refusal of defendant to pay Lloyd's share according to the covenant of 1858; this action was brought to recover it.
The defendant professes not to dispute any of the doctrines upon which the decision of this Court went, in a former case between the same parties, arising out of the same matters, reported in 64 N.C. 1. He now puts his defense on matters not then appearing on the record, and it will be convenient to consider them successively.
1. He denies that Cobb and Harrell owned a canal in 1855. He admits that there was a canal situated as described, and through which the water from their lands actually flowed through his lands; but he denies that they had any rightful title to the easement.
We think it unnecessary to consider what effect the actual (638) enjoyment of the easement without a title, would have on the present case, for we think that Cobb and Harrell did have a title. *Page 514 
At February Term, 1847, of Edgecombe County Court, they filed their petition against the present defendant and others, under the act of 1795, Rev. State., chap. 40, setting forth in brief, that they severally owned lands which could not be drained except through the lands of defendants, and praying for a jury to lay off a canal, c. It was ordered accordingly.
At May Term, 1847, the jury returned that a canal, as prayed for, was necessary; prescribed its route minutely, and assessed damages to the owners of the lands through which it would pass. The report was confirmed, the damages were paid into Court, and the canal was cut.
As the law then stood, the petitioners acquired not merely an easement, but a title in fee to the lands condemned by the jury. No irregularity in the proceedings has been pointed out, and if any existed the defendant could not collaterally impeach the decree on that account.
The defendant takes higher ground, and contends that the act of 1795 was unconstitutional, because it took his property for a mere private purpose. It is admitted that that cannot be lawfully done, and the only question on this point is as to the character of the purpose; whether it was to the benefit of one, or of a limited number of individuals only, or of such general and public utility, as justifies a State in the exercise of its power of eminent domain.
It is well known that in the Atlantic section of this State there are hundreds of thousands of acres of what are called swamp lands, which from the flatness of their surface and the filling up of the natural courses of drainage, if any ever existed, cannot be relieved of the water which ordinarily covers them, and made fit for human habitation and cultivation, except by cutting artificial canals from them into some convenient creek or river, which must necessarily pass through (639) the intervening lands of the riparian proprietors. If these canals can be cut only by permission of the owners of the banks of the necessary outlets, this vast area of fertile land must remain for ages an uncultivated and unpopulated wilderness, and it will be entirely valueless to those who bought it from the State on the faith of its laws. An act which aims to remedy so great an evil, affecting so many persons now living, and so many more in the future, must be deemed one of general and public utility. In an agricultural view it now benefits the whole population of that part of the State in which these swamps are found. The right of the State to condemn lands for drains, rests on the same foundation as its right in cases of public roads, mills, *Page 515 
railroads, cartways, school houses, forts, light houses, c. In the case of public roads, it has never been doubted, and the weight of authority is decidedly in favor of its existence for the other purposes mentioned. Roads and aqueducts are classed together in the Institutes as servitudes of the same public character. In the swamps which the act in question chiefly affects, the canals are more important than the roads, as they must always precede them. The right to drain through the banks of a natural water course is exactly similar in character to the right to construct dykes or levees to keep their excessive waters from overflowing the adjacent lands, a right which has been recognized in the legislation of all countries from the most ancient times. Witness the dykes which protect the coast of Holland, the fens of Lincolnshire, the lands on the Mississippi and on the Po. Both purposes are classed together in our act of 1789.
The act in question, and others of a like character respecting mills,c., are of ancient date. They have been incidentally sanctioned by this Court in many decisions, and if their constitutionality has never been directly affirmed, it may be because it was never questioned. These acts are not peculiar to North Carolina. Acts concerning mills, similar to ours, exist in many of the States; (Washburn Easements, 394, (329;) and respecting drainage at least in Massachusetts, (Gen. Stat. ch. 148) and New York, (2 Rev. St. 548; People v. (640)Nearing, 27 N.Y. (13 Smith) 306.) The constitutionality of the Mill Acts has been sometimes questioned. Washburn Easements; Tylerv. Beacher, 44 Vt. 648. This last case cites the principal authorities, and quotes from COOLEY, J., in a Michigan case, to the effect that when the State reserves a control over the parties to whom the casement is given, the power of eminent domain may be lawfully used in their behalf. In the law we are discussing, the State reserves such a control.
The canal is the private property of the petitioners, but all may acquire a right to drain into it on just terms, and their reciprocal duties may be regulated from time to time by the Courts. We conclude that both upon reason and authority the natural water courses of a country arepublici juris for all purposes of general utility, whether of navigation, for public landings tow paths, levees, or the outlet of canals.
II. The defendant contends that the covenant of Lloyd does not run with the land. His counsel endeavored to distinguish the present case from that in 64 N.C. 1, by reason that it appeared, or was assumed there, that the canal was, in part, situated on the Lloyd lands, when it appears now that it does not touch either piece, although it is near enough to them to affect them somewhat. *Page 516 
The language of Lord COKE in Spencer's case, (1 Smith L. C. 23,) does not require a physical touch. "But although the covenant be for him or his assigns, yet if the thing to be done be merely collateral to the land, and do not touch or concern the thing demised in any sort, there the assignee shall not be charged." In this case the thing to be done is to pay for work done on a canal which does not touch the land of the covenator, but is to his benefit, and the way in which it was contemplated to obtain that benefit more fully and directly, was by connecting the land with the canal by a ditch, which must, of course, touch the land; and its not being in ease at the time makes no difference when assigns are mentioned. Looking at the whole agreement, (641) of which the covenant was a part, it is clear that it did directly concern the land.
Many cases have held, that where a covenant is not to be performed on the land, but concerns it, the covenant will be enforced in equity against an assignee of the covenantor, with notice, as the defendant here is. Tulk v. Moxhay, 2 Phil. 776; (22 Cond. E. Ch. R.;) 11 Bew. 571; Westernv. McDermot, 1 Eq. R. 449; 2 ch. Ap. 72; Barrow v. Richard, 8 Paige 351;St. Andrews' Church, appeal, 67 Pa. 512.
Independently of this however, there are two arguments which might be out of place in a mere Court of law, but which a Court of equity is entitled to notice, that must be considered conclusive of the question:
1. The consideration for the covenant was the grant of an easement which became appurtenant to the land, and passed with it to the defendant on his purchase. This easement he has accepted and enjoyed, and it is his only title to drain the land into the canal. The principle is generally conceded, and it is certainly equitable, that when the benefit and burden of a contract are inseparably connected, both must go together, and liability to the burden is a necessary incident to the right to the benefit. Qui sentit commodum sentire debet et onus; Notes to Spencer's case, 1 Smith L. C. 143; Savage v. Mason, 3 Cush. 318; Coleman v. Coleman, 7 Harriss 100.
2. If Lloyd had obtained his right to drain into the canal by proceeding under the Revised Code, chap. 40, as he might have done, it is clear by section 13, that the obligation to contribute to repairs would have run with the land. When the same rights are obtained and the same burdens assumed by a contract which expressly stipulates that the burdens shall run with the land, there can be no reason why such a stipulation must be held unlawful and forbidden to have that effect. If Lloyd had proceeded under the act, he might have made the *Page 517 
defendant a party for the purpose of condemning his intervening lands; but defendant would not have been a party to that part of the proceedings which gave Lloyd a share in the canal and adjusted his duties with the other owners, for the defendant had no share in the (642) canal and no concern in those matters.
III. Defendant contends that Cobb and Harrell had no right to permit strangers to the decree of the County Court to drain into the canal, whereby a greater quantity of water and sand has been brought down upon his lands than was contemplated in the decree, and that by such misuser of their rights they forfeited them.
1. The first answer which may be given to this proposition is, that the defendant is not in Court as the owner of the lands which he owned at the time of the decree, and which are the lands injured by the misuser, but as the assignee of Lloyd, and the whole issue is upon his liability as such. The Lloyd lands are not injured by the misuser, and that in other respects he is injured, is not pertinent to the issue. Besides, Lloyd could not complain of the alleged misuser. He derived his right from the new owners, and by his covenant with them admits their rightful ownership, and the defendant stands in Lloyd's shoes in respect to the Lloyd lands. If the defendant is damaged in these, by the omission of the parties to the covenant to repair the lower portion of the canal, the covenant points out his remedy. He may determine what repairs are necessary and do them, and compel contribution from the other parties.
2. Supposing however, that the defendant can avail himself of a defence not open to his assignor, and assuming that the lands which he owned at the date of the decree are damaged by the misuser, is his remedy by defeating the present action?
The principle established by the authorities cited by the learned counsel we conceive to be this: If the owner of an easement over the land of another unlawfully enlarges it to the injury of the owner of the servient land, the easement is lost or suspended during the continuance of the misuser. Washburn, 538; Jones v. Tapling, 11 C. B. N. S. 283; Wood v.Copper Miners' Co., 14 C. B. 428; Sharpe v. Hancock, 7 Man. Gr. 354.
In the last case the easement was a right to drain over the land of the defendant; the plaintiff altered that part of the drain which was on his own land, so as to throw an increased quantity of (643) water into that part of it on the defendant's land, and whichthe defendant was bound to maintain in repair, thereby increasing his burden. In the present case, the defendant (independently of his liability as assignee) is under no obligation to repair. The conclusive *Page 518 
answer to the defendant's proposition is this: The act of 1795 implicitly allows, and the Revised Code expressly provides, that strangers to the original decree may drain into the canal, (sec. 9) and it would be absurd to hold that what may be done in invitum, may not be done by the voluntary agreement of the parties. The possible future enlargement of the use of the easement was contemplated in the grant of it, and was therefore not unlawful. If however the defendant is damaged by such a change; if the capacity of the canal at its mouth is insufficient to vent the increased quantity of water flowing down, or if the owners of the canal neglect to repair it, so that the water spreads over the defendant's land, it is clear that he has a remedy.
The acts cited and the common law cast on the owners of the easement the burden of repair. Washburn 564; Egremont v. Pulman, Moody M. 404; Bell v.Twentyman, C. B. 766. But a right of the defendant to damages for a breach of this duty, would not relieve him from the present liability.
PER CURIAM. Judgment affirmed.
Brown v. Keener, 74 N.C. 717, 718; Winslow v. Winslow, 95 N.C. 28;Hutton v. Webb, 124 N.C. 757; Porter v. Armstrong, 129 N.C. 104; Porterv. Armstrong, 134 N.C. 451; Durham v. Cotton Mills, 141 N.C. 644; Ford v.Manning, 152 N.C. 153; Sanderlom [Sanderlin] v. Luken, 152 N.C. 741;Forehand v. Taylor, 155 N.C. 355; Shelton v. White, 163 N.C. 93; Herringv. Lumber Co., 163 N.C. 486; Lang v. Development Co., 169 N.C. 664.