## A. A. BROWN v. A. L. KEENER.

The Act of the General Assembly, passed at its session of 1873-'74, and entitled "An Act to secure a better drainage of the low lands on Clark's creek and Maiden's creek in the counties of Lincoln and Catawba," is not unconstitutional.

The public power of a State (which is a part of its general legislative power,) extends to the providing for every object, which may be reasonably considered necessary for the public safety, health, good order or prosperity, and which is not forbidden by some restriction in the State or Federal Constitution, or by some recognized principle of right and justice found in the common law.

(*Norfleet* v. *Cromwell*, 70 N. C. Rep. 634; *State* v. *Bell*, Ired. 373; *Buncombe Turnpike Co.* v. *McCarson*, 1 Dev. & Bat. 306; *Wilmington* v. *Yopp*, 71 N. C. Rep. 75, cited and approved.)

Bynum, J., *dissenting.*

Civil Action, for a penalty, originally commencing in the Court of a Justice of the Peace, was carried before his Honor, Judge *Mitchell*, at Chambers, in Catawba county, and heard 29th of May, 1875, upon the following

### CASE AGREED.

"This was an action of debt, brought by the plaintiff to recover the sum of four dollars from the defendant, for failing to work on Clark's and Maiden's creek, under the act of Assembly, passed at the session of 1873-'74, public laws, chap. 102, and the act amending the same, passed by the General Assembly at its session, 1874-'75, entitled "An Act to secure the better drainage or low lands of Clark's and Maiden's creeks, in the counties of Lincoln and Catawba."

It was agreed by the counsel for both plaintiff and defendant, that the requirements of the act had been complied with ; and that the points mentioned in said act, from the bridge at James Caldwell's to the foard at the creek near the Ann Bost Place, is about eighteen miles : that the said creek had been laid off into convenient sections ; and that the defen-

dant had failed to work as notified ; that said creeks are about twenty feet wide, and will average when in bank, about two feet deep.    That there is a large quantity of low grounds along the said creeks, which are wet and marshy, too much so for cultivation.

1t was further agreed, that along said creeks a number of the resident citizens had chills and fevers."

Upon the foregoing facts admitted, his Honor affirmed the judgment of the Justice of the Peace, which was in favor of the plaintiff.    From this judgment, the defendant appealed, stating as ground therefor, that the said acts above mentioned, were unconstitutional and void, and that the Legislature had no power to pass the same.

*Shaw*, *Hoke* and *Battle*, for appellant.
*M. L. McCorkle*, contra.

RODMAN, J.    By the act of 1873–'74, chap. 102, certain persons in Lincoln county were appointed commissioners for Clark's creek, and certain other persons, in Catawba county, for Maiden's creek, to lay off portions of said creeks between certain *termini* on each, into sections of convenient length, and to appoint an overseer for each section.    Provision is made for the permanence of the commissioners as a body, by the filling of vacancies by the survivors.    By section 3 it is enacted, "that the commissioners shall estimate the number of acres of bottom land on said creeks between said *termini*, belonging to each land owner within their respective counties, and each land owner, when required, shall furnish one hand for every twenty-five acres (amended in respect to the number .of acres by the act of 1874–'75,) owned by him, or shall forfeit two dollars for each failure, to be recovered by the overseer of the section, as in case of failure to work on a public road.    The hands so furnished shall work under the overseer not less than four nor more than twenty-four days in each

year, at the discretion of the commissioners, " on the channels of said creeks, with power to straighten the same when neces- sary, within the bounds of their respective sections, removing obstructions and improving the banks thereof, under such di- rections as said commissioners shall prescribe."

The other sections are not material for this case.

1. It will be seen that the act is defective in failing to de- fine what persons shall work on each particular section, either by authorizing the commissioners to attach all persons living within a certain defined district to each section; or to name the persons subject to work on each section, as is prescribed by law in respect to public roads.   Probably a grant of this power to the commissioners might be implied; but as no question is made upon it, we pass it over.   The case agreed is also defective, inasmuch as it does not state that the defendant was an owner of bottom land, or had been assigned to any section, or was in any way under a liability to do the work required.

As this evident and fatal objection to the plaintiff's recovery was not taken by councel, we assume that it was the purpose of the defendant to waive it, and to rest his defence solely on the ground taken by his counsel in argument, viz:   that the act is unconstitutional.

2. It is too late to question that the public power of a State (which is a part of its general legislative power), extends to the providing for every object which may be reasonably con- sidered necessary for the public safety, health, good order or prosperity, and which is not forbidden by some restriction in the State or Federal Constitution, or by some recognized principle of right and justice found in the common law.   It is unnecessary to consider at present the limits of this exten- sive power, since it clearly includes the right to provide for and compel the clearing out not only of such water courses as are naturally navigable, but of all such water courses and drains as are not and never were navigable, but which are

necessary for carrying off the surplus rain water, thereby promoting the public health, and enabling a considerable portion of territory otherwise uninhabitable to be brought into cultivation. *Norfleet* v. *Cromwell*, 70 N. C. Rep. 634. *People* v. *Mayor of Brooklyn*, 4 Const. R. 440. *Carter* v. *Tide Water Company*, 18, N. J. 54; *State* v. *Blake*, 36 N. J. 442. *Reades* v. *Treasurer of Wood Co.*, 8 Ohio, N. S. 343. Cooley Const. Lim., chap. XVI, 2 Dillon Mun. Corp. sec. 506.

At an early period, the General Assembly of North Carolina, by an Act (Rev. Code, chap. 100) entitled "Rivers and Creeks," recognized the power and duty of the State, to open and clear out its inland rivers and streams, and gave to the County Courts powers in that respect similar to those for opening and repairing roads. That Act also prohibited obstructing the passage of boats in such streams by felling trees. Before and since the Revised Code, very numerous Acts have been passed, prohibiting felling trees in particular streams many of which never were navigable, or of use, except as constituting the natural drain ways of the country.

The right to the use of natural drain was in their natural condition, for drainage is as much *publici juris*, as the right to navigable waters for navigation; and at common law no one has a right to obstruct them to the injury of another. *Krufman* v. *Greisegner*, 26 Pa. 407.

3. Starting with this doctrine as to the extent of the police power of the State, we proceed to consider the objections made to the Act in question.

The act substantially incorporates certain persons named, and empowers them to determine who are the owners of the bottom lands on the creeks named above, and of course what is bottom land, the area of ownership and the consequent liability. These corporators, for ought that appears, are strangers to the lands; they form what is called a close corporation, keeping up a perpetual succession by electing to fill vacancies in the body. The owners of the land have no voice

in the corporation, and are not required to be consulted in regard to the operations. And no means are expressly provided by which any error which the Commissioners may commit, can be reviewed in a court.

That the act is objectionable in several respects, and liable to abuse, and likely in practice, to lead to much litigation, must be admitted. But its wisdom is not the question before us. If it be within the constitutional powers of the Legislature, we cannot declare it void.

It is argued for the defendant: *First*, That it does not appear that the object to be accomplished is one of any public utility, however local. It was said in *Norfleet* v. *Cromwell*, 70 N. C. Rep. 634, that if an object was of the class of those which might be of public utility, an act of the Legislature was at least *prima facie* evidence that the particular object contemplated was of that character.

Whether the object be of *public* utility at all, and whether of generol, or only of local utility, is for the Legislature to decide. In general, an act which authorizes a corporation or public officer to make an assessment on the property owners within a given locality, to pay the expense of a certain improvement, must be taken to be a legislative declaration that the improvement is of public, though of local, utility and benefit. No recital or express declaration · to that effect, is usual or can be necessary, any more than a recital or express declaration that a railroad (for example) for the building of which a State tax is laid, is of general public utility, is usual or necessary in its charter, or in the act levying the tax.

Whether the Act authorizing a local assessment for a local improvement, contains such an express recital or declaration, or not, it is open to any one grieved to impeach it as a violation of his private right, and if it can be made clearly to appear that the object proposed is not, in fact, one in which the public has an interest, and that the assessment has been made upon persons who have not consented to it, and are not bene-

fited by the improvement, or that the assessment exceeds the estimated benefit; in all such cases the act is, in effect, the taking of one man's property for the benefit of another, and beyond the constitutional power of the Legislature. The courts are bound to declare such an act void. *Cypress Pond Draining Co.* v. *Hooper,* 2 Metcalf, (Ky.) 350; *Coster* v. *Tide Water Co.,* 18 N. J. 54; *State* v. *Blake,* 36 N. J. 442.

In this case the object proposed is certainly of a class which may be of public local utility, and there is no evidence to show that in fact it is not. In the absence of such evidence, we cannot presume that the Legislature acted illegally. There is nothing in the record in the case to justify the court in declaring that the cleaning and straightening these creeks did not tend to promote the health and welfare of the public in that locality, and was not of public, as distinct from mere private advantages.

*Secondly.* That the rate of taxation should be upon each land owner within the locality, according to the benefit that it may he estimated he will receive, and not according to the number of acres he may own. Different tracts may be benefitted in very different degrees, and some may be even damaged. And further, that the amount of work which may be required to be done is not limited by the estimated value of the benefit, but may exceed it.

The rule suggested would certainly seem in general to be the just and equitable one, when the value of the benefit to be received can be calculated with reasonable certainty.

There are, however, numerous authorities in this State and others, which hold that the Legislature is not obliged to adopt it, but may assess the owners of the land to be benefitted according to the acres owned by them respectively, or by some other rule not evidently unequal and unjust.

In *Buncombe Turnpike Co.* v. *McCarson,* 1 Dev. & Bat., 306, the Legislature had chartered a company with power to build a turnpike and take tolls. The act required all men

living within two miles of the road to do a certain amount of work on it under a penalty in case of failure, and exempted such persons from tolls, giving them, however, no choice to pay tolls in lieu of the work if they should prefer to do so. The act was held constitutional.

In *Wilmington* v. *Yopp*, 71 N. C. Rep., 75, the corporate authorities of the city required each owner of a lot fronting on a certain street to pave the side walk in front of his lot under a penalty, and this by-law was supported. Cases to the same effect with this in other States are too numerous to be cited.

In *Egyptian Levee Co.* v. *Hardin*, 27 Mo., 495, the case was that the Legislature of Missouri had incorporated the land owners of a certain district of low land, with power to raise levees and cut canals for the purpose of reclaiming the lands from inundation, and empowered the company, in order to meet the expense, to tax the land not over fifty cents per acre. The constitution of Missouri contains a clause similar to that in ours, requiring uniformity of taxation. But it was held that this was not a tax, but an assessment to which the rule did not apply, and the act was sustained. See also *Ruve* v. *Treasurer of Wood county*, 8 Ohio N. S., 333.

*Thirdly.* That there is no provision that the assessment in labor shall not exceed the value of the estimated benefit to the land in respect to which it is required.

This objection might have been made in the Buncombe Turnpike case, but it does not appear to have occurred to either the counsel or the court. On that account we do not consider the decision in that case as being an answer to it. What was not considered, cannot be said to have been decided.

We think, however, that the mere possibility that such may be the case, will not justify us in declaring the act in question void. When such a case shall be presented, it will be time enough to consider it. We have no such case now.

*Fourthly.* That no provision is made for the compensation

of any land owner who, instead of being benefitted, is damaged by the improvement. It will suffice to say, that although such a provision might have been proper, it was not essential. If such a case shall occur, the party injured can obtain redress under the general law, by action against the corporation or its members, according to the nature of the case. It is not for us to point out the manner of the remedy.

*Fifthly.* That no provision is made by which any errors which the commissioners may commit, either in determining what are bottom lands, or who are the owners of such lands, may be brought into a court for correction.

It is clear that before a recovery can be had for any penalty all the facts necessary to show the liability of the defendant must be alleged and proved.

And if the commissioners shall commit any error to the injury of any one, which cannot be corrected by the ordinary process of law, it is settled that the proceedings of all persons acting in a quasi judicial character, may be brought before the courts for review by *certiorari*. *State* v. *Bell*, 13 Ire., 373.

Our opinion in the present case is, that the plaintiff is entitled to recover.

PER CURIAM. Judgment affirmed.