MARGARET SHABER, Administratrix, *vs.* ST. PAUL WATER COMPANY.

February 6, 1883.

**Real Property—Covenant Running with the Land—Definition.**—A covenant runs with the land when either the liability to perform it, *i. e.,* its *burden,* or the right to take advantage of it, *i. e.,* its *benefit,* passes to the assignee of the land. To enable a covenant to run with land so as to give the assignee its *benefit,* the covenantee must be the owner of the land to which the covenant relates; but the covenantor may be either a person in privity of estate with the covenantee or a stranger; while, with reference to the subject of the covenant, it is sufficient that it be for something to be done, or refrained from, about, touching, concerning, or affecting the covenantee's land, (though not upon it,) if the thing covenanted for be for the benefit of the same, or tend to increase its value in the hands of the holder.

**Same — Continuing Covenant to Maintain Water in Lake.** — Application of these principles to the facts of this case,—where the covenantee was owner of land upon a creek embracing a water-mill privilege, the covenantor, a water company, proposing to divert water from a lake out of which the creek flowed, and the covenant to maintain such a stage and volume of water in the lake that the quantity flowing in the creek should not be diminished by the diversion,—the covenant being *held* to run with the land of the covenantee. Such a covenant is continuing, so that the damages from its breach, and the right of action therefor, accrue to him who holds the property when the breach occurs.

Appeal by defendant from an order of the district court for Ramsey county, *Simons*, J., presiding, overruling its demurrer to the complaint. The substance of the complaint is stated in the opinion.

*C. K. Davis*, for appellant.

The contract set out in the complaint is an independent, personal covenant, distinct from the land, requiring no act to be performed on the land, and creating no privity of estate between the contracting parties, and did not vest any rights in their grantees.

It requires a privity of estate to give one man a right to sue another upon a covenant, where there is no privity of contract between them. *Webb* v. *Russell*, 3 Term Rep. 393; *Hurd* v. *Curtis*, 19 Pick. 459; *Lynn* v. *Mt. Savage Iron Co.*, 34 Md. 603; *Wheeler* v. *Schad*, 7 Nev. 204. Even as to covenants which run with the land, when once broken, their capacity for running with the land at once ceases. Rawle on Covenants, 536; *Shelton* v. *Codman*, 3 Cush. 318; *Field* v. *Snell*, 4 Cush. 504; *Tillotson* v. *Boyd*, 4 Sandf. 516. The principle is, of course, much stronger in the present case of a personal, collateral covenant. *Glenn* v. *Canby*, 24 Md. 127; *Brewer* v. *Marshall*, 19 N. J. Eq. 537; *Thomas* v. *Hayward*, L. R. 4 Exch. 311; *Keppell* v. *Bailey*, 2 Mylne & K. 517.

The right of one not a party to a contract to sue on it has never been extended to a contract under seal. *Robb* v. *Mudge*, 14 Gray, 534; *Inhabitants of Northampton* v. *Elwell*, 4 Gray, 81; *How* v. *How*, 1 N. H. 49; *Moore* v. *House*, 64 Ill. 162.

The breach was complete before plaintiff had acquired any interest in the property. It had become a right of action in the plaintiff's grantors, and did not pass by the deed. Anson on Cont. 8,

266; 1 Smith's Lead. Cas. (4th Ed.) 151; *Pomeroy* v. *Chicago & Mil. R. Co.,* 25 Wis. 641.

*John B. & W. H. Sanborn,* for respondent.

BERRY, J.[*] In January, 1869, John R. Irvine and Nancy Irvine owned certain land, (in the city of St. Paul,) through which ran Phalen creek, affording a valuable mill privilege thereon. Leonard Schiegel, as the lessee of the Irvines, had constructed a dam and race upon the land, by which the mill privilege was utilized in the running of a flour mill, which he had also erected thereon and was operating. By sundry subsequent conveyances the land, with the race, dam, mill, and privilege, came to Henry Shaber, the plaintiff's intestate, and the same are now part of his estate. The defendant corporation, the St. Paul Water Company, was formed to supply the city of St. Paul with water. In January, 1869, the company, in carrying out this purpose of its creation, was about to tap Lake Phalen and lay pipes by which to divert and draw off the water thereof. Phalen creek flows from Lake Phalen, which is the last and lowest of a chain or series of lakes, constituting a local water system. The Irvines and Schiegel objected to the proposed diversion of water, refused to permit it, and threatened to enjoin it, because, unless provision was made for bringing into Lake Phalen, from other sources and by artificial means, as much water over and above what naturally flowed into the same as the company should at any time draw out, the level of the lake would be lowered, the quantity of water flowing into the creek diminished, and the mill privilege impaired and destroyed.

To remove the opposition, and to induce them to refrain from enjoining its proceedings, the company entered into a written agreement, by which, "for a good and valuable consideration," it covenanted and agreed with the Irvines and Schiegel, "their heirs and assigns, severally and separately," that it would make certain specified "improvements," such as dams, gates, canals, and channels, all within one year from the 8th day of February, 1869; that it would at all times thereafter keep and maintain the same in a "good, strong, and substantial manner," and that it would do and refrain from do-

[*] Gilfillan, C. J., because of kinship to one of the parties, took no part in this case.

ing certain other things, all having reference to maintaining the supply of water in the creek; and further, that the volume of water flowing out of Lake Phalen through Phalen creek should never at any time be diminished or rendered less available for the purpose of the water-power mill-privilege before mentioned, by any work or operation of the company, than it had been before it commenced its operations; that it would never draw or take out of the lake at any time any more water than such quantity as it should introduce into the same by its said improvements and by artificial means over and above the quantity which naturally flowed into the same; and that it would, by its said improvements and by artificial means, introduce and lead into the lake at all times as large a volume of water as it should draw out, in addition to what flowed into the lake through natural channels. The plaintiff alleges that defendant has failed to make the specified "improvements," and that it has broken its covenants in reference to maintaining the stage and quantity of water in the creek, and that, in consequence of said failure and breaches, the flow of water in the creek has been diminished by the drawing and diverting of water by defendant from Lake Phalen, and thereby the said Shaber, in his life-time, and his estate since his decease, has been greatly damaged (as particularly set forth) in respect to the mill, water-privilege, and the use and operation of the same, and that he and his estate have been subjected to great expense and loss on account thereof. This appeal is taken from an order overruling defendant's general demurrer to the complaint.

Our examination of the case has brought us to the conclusion that the appeal presents a single question, viz.: Whether any of the covenants entered into by defendant run with the land of the covenantees to Shaber and his estate? This is a pure common-law question, to be decided upon the authorities.

We think the following propositions embody the rules of law applicable to the case, and that they are supported by the authorities cited: A covenant runs with land when either the liability to perform it, i. e., its *burden*, or the right to take advantage of it, i. e., its *benefit*, passes to the assignee of the land. *Savage* v. *Mason*, 3 Cush. 500; 1 Smith, Lead. Cas. 120.

To enable a covenant to run with land so as to give the assignee its *benefit*, the covenantee must be the owner of the land to which the covenant relates; but the covenantor may be either a person in privity of estate with the covenantee, or a stranger; while, with reference to the subject of the covenant, it is sufficient that it be for something to be done, or refrained from, about, touching, concerning, or affecting the covenantee's land, (though not upon it,) if the thing covenanted for be for the benefit of the same, or tend to increase its value in the hands of the holder. *Spencer's Case* and notes, Eng. & Amer., 1 Smith, Lead. Cas. (7th Am. Ed.) 115, where all the learning upon the subject appears to be collected; *Packenham's Case,* 42 Edw. III. 3, abstracted in 1 B. & C. 410, 415; Anson on Contracts, \*220; Pollock on Contracts, 219; Rawle on Covenants, 334, and notes; *Norman* v. *Wells,* 17 Wend. 136; *Norfleet* v. *Cromwell,* 70 N. C. 634; 1 Smith, Lead. Cas. 122, 124, 139, 140, 175, 177, 181, 183; *Allen* v. *Culver,* 3 Denio, 284; *Van Rensselaer* v. *Smith,* 27 Barb. 104, 146; *Nat. Bank* v. *Segur,* 39 N. J. Law, 173.

The case at bar is controlled by these principles. The Irvines—the covenantees—were the owners of the land to which the defendant's covenants related; that is to say, they owned the mill-site upon which was the water-privilege which it was the object and purpose of the covenants to preserve and protect; and the covenants were for something to be done, and to be refrained from, about, touching, concerning, and affecting the covenantees' land, for the benefit thereof, and tending to increase its value in the hands of the holder. The covenants were of a character to run with the land, so as to enable the assignee of the covenantees to take advantage of them. When it is considered what it was that the water company proposed to do, and for what purpose the covenants were made, it would be astonishing if this were not the case. The diverting the water of Lake Phalen, without provision for counteracting it, would be a perpetual injury to the land of the covenantees. No protection against such an injury would be adequate unless it was also perpetual. That nothing less could have been fairly intended by the parties to the covenants is apparent from the allegations of the complaint.

It is insisted by defendant that the breach of the covenants was complete before plaintiff had acquired any interest in the property to which they related; that it had become a right of action, and did not pass to the plaintiff. If the covenants to make the specified improvements within a year from February 8, 1869, were all the covenants entered into, this point might possibly be well taken. But such is not the case. These improvements are not only to be made, but at all times thereafter to be kept and maintained in a "good, strong, and substantial manner," and the volume of water flowing out of Lake Phalen through the creek is to be maintained undiminished by any of the operations of the defendant, with other covenants of similar import. These are, therefore, continuing covenants, and for that reason, and because they run with the land, the damages from their breach accrue to him who holds the property when the breach occurs—or, in other words, to the person injured—and to him the right of action therefor necessarily belongs. *Jeter* v. *Glenn*, 9 Rich. (S. C.) Law, 374. In this respect they are analogous to covenants for quiet enjoyment and warranty, which inure to the protection of the owner for the time being of the estate which they are intended to assure. Rawle on Covenants, 352, and citations. The covenants relating to the making of the specified "improvements" provide for the means by which a certain result is to be accomplished, while these continuing covenants provide for the result itself. The latter are, therefore, the most important, because they go to the substance rather than the form in which the result in view is to be accomplished. If the continuing covenants are kept, the damages for the breach of the others would be comparatively, if not altogether, nominal. For these reasons we are of opinion that the complaint states a cause of action, and that the demurrer was, therefore, properly overruled.

We have not overlooked the case of *Kimball* v. *Bryant*, 25 Minn. 496, though we have not before adverted to it, as it was not cited or alluded to upon the argument. But it seems to us that the principle of the decision there made may have an important bearing upon

the case at bar, and in support of the conclusions to which we have arrived.

Order affirmed.*

*THEODORE HAMM and another *vs.* ST. PAUL WATER COMPANY.

February 6, 1883.

BERRY, J. This case follows *Shaber* v. *St. Paul Water Company.*
Order overruling demurrer affirmed.