JOHN SJOBLOM and Another v. E. MARK and Others.[1]

January 24, 1908.

Nos. 15,458—(141).

**Covenant not to Sell Liquor.**

An agreement by an owner of land with an adjoining owner that for the period of ten years he will not sell or permit to be sold upon the premises any intoxicating liquor is not a covenant running with the land.

**Personal Covenant—Record not Notice.**

Although executed by the owner on behalf of his heirs, executors and assigns, such contract is merely the personal covenant of the owner, and is not a conveyance, within the meaning of section 3334, R. L. 1905, and the record thereof does not constitute constructive notice to a subsequent purchaser, who takes the legal title by a conveyance which is silent as to the covenant.

**Subsequent Purchasers.**

Where such a covenant is not contained in a deed or indenture in the chain of title, subsequent purchasers and assigns are not bound thereby, unless they have such knowledge or notice thereof as to imply that the burden was assumed as a part of the consideration.

Action in the district court for Mille Lacs county to enjoin defendants E. Mark, Frank Smith and his wife Elvena, and J. F. Sullivan, from maintaining a saloon on certain premises. The case was tried before Taylor, J., who found that defendants were entitled to a dismissal of the action and ordered judgment in accordance therewith. From this order, plaintiffs appealed. Affirmed.

*Charles Keith* and *Reynolds & Roeser,* for appellants.

*E. L. McMillan,* for respondents.

[1] Reported in 114 N. W. 746.

103 M.—13

LEWIS, J.

Action to enjoin respondents from maintaining a saloon on certain premises. The following contract was executed:

"This agreement, made this 5th day of April, 1905, by and between E. Mark and Celia Mark, his wife, all of Princeton, Minnesota, parties of the first part, and Theo. Hamm Brewing Company and John Sjoblom and Edward Sjoblom, parties of the second part, witnesseth:

"Whereas, the parties of the first part are the owners of lots one and two in block five of townsite of Princeton, in Mille Lacs county, Minnesota; and

"Whereas, the said John Sjoblom and Edward Sjoblom, two of the parties of the second part, are engaged in the saloon business at said Princeton, Minnesota, and the said Theo. Hamm Brewing Company is engaged in the brewing business at St. Paul, Minnesota, and sells beer to the said John Sjoblom and Edward Sjoblom at their place of business in Princeton:

"Now, therefore, in consideration of five hundred dollars this day paid to the parties of the first part by the parties of the second part, the said parties of the first part, and each of them, do hereby covenant and agree to and with the said parties of the second part, and each of them, that they will not for the term of ten years from and after this date sell or dispose of upon said premises above described, and will not permit to be sold or disposed of upon said premises, any intoxicating liquors of any character; that the said parties of the first part will not lease said premises, or any part thereof, to any person or persons for the purpose of operating a saloon thereon during said term; and that said parties of the first part will not during said term operate or permit to be operated by any person or persons what is commonly known as a saloon or place for the sale of intoxicating liquors upon said premises.

"This agreement shall extend to and be obligatory upon the parties hereto, and their respective heirs, executors, administrators, and assigns."

June 6, 1905, the contract was recorded in the office of the register of deeds of Mille Lacs county, in Book B of Contracts and Agree-

ments. January 26, 1906, John F. Petterson, in whose name the title to the premises stood, executed and delivered a quitclaim deed of the premises (his wife joining) to respondent Elvena Smith, which deed was duly recorded. Sullivan leased the premises from respondent Frank Smith. During all the time herein mentioned the appellants John and Andrew Sjoblom were the owners of and occupied a certain brick saloon situated on lot twelve of the same block.

The foregoing facts were set out in the complaint, and it was alleged that respondents had actual and constructive notice of the contract. Respondents answered, admitting the execution of the contract, but denied any notice whatever of the same at the time of the execution of the deed to Mrs. Smith, and alleged that the deed made no mention of the contract and was without any restriction whatever in regard to the use of the premises. The cause was submitted to the trial court upon the pleadings, and the court found that the agreement was executed and recorded as alleged in the complaint, and that respondent Sullivan was operating a saloon in connection with a hotel on the premises, but did not find that respondents had actual or constructive notice of the contract.

Appellants submit that the contract embraces a covenant which runs with the land, but, if not, that it created an easement or equity in the land, and, the grantee, Smith, having been a purchaser with constructive notice of the contract, that its provisions may be enforced against him and his assigns.

Perhaps the proper legal principles may be best ascertained by treating the subject somewhat historically. A covenant is said to run with the land when either the liability to perform it or the right to take advantage of it passes to the assignee of the land. In Spencer's case, the leading case on the subject, the rule was laid down that when the covenant extends to a thing in esse, parcel of the demise, annexed and appurtenant to the thing demised, it shall go with the land and shall bind the assignee, although he be not bound by express words, but, when the covenant extends to a thing which is not in being at the time of the demise made, it cannot be appurtenant or annexed to the thing which has no being. Through a long line of decisions in both England and America it has become the settled rule that a cove--

nant or contract which deals simply with the use of land is not a covenant running with the land, because it creates no interest in the land conveyed. 1 Smith, Lead. Cas. (11th Ed.) p. 61.

However, in Tulk v. Moxhay, 2 Phillipps, 774, it was held that a covenant made by the purchaser of land that he and his assigns would use or abstain from using the land in a particular way, might be enforceable in equity against all subsequent purchasers with notice of the covenant, without reference to the question whether such covenant runs with the land or not. In many of the subsequent English cases it was held that covenants which may thus be enforced in equity are confined to what are denominated "restrictive covenants"; that is, they may be enforced in so far as they prohibit the purchaser from doing or performing some certain thing with reference to the land granted. Considerable confusion and uncertainty is met with in the books when one attempts to determine precisely what is meant by this equity which may be enforced against subsequent purchasers with notice.

In Haywood v. Brunswick, L. R. 8 Q. B. Div. 403, decided in 1881, it was held that a covenant in a deed to build and repair buildings could not be enforced against an assignee, although it appeared that the conveyance was taken subject to the covenant, and that the assignee also had actual notice thereof. The covenant was held not enforceable against the assignee, on the ground that it required the performance of affirmative acts.

But in Catt v. Tourle, 4 L. R. Ch. App. Cas. 654, decided in 1869, the court held that a covenant in a deed providing that the grantor should have the sole right of supplying beer to any public house erected on the land could be enforced against a subsequent purchaser acquiring a portion of the land with notice of the covenant; the court using the following language: "Reason and justice seem to prescribe that at least, as a general rule, where a man by gift or purchase acquires property from another with knowledge of a previous contract, lawfully and for valuable consideration made by him with a third person, to use and employ the property for a particular purpose in a specified manner, the acquirer shall not, to the material damage of a third person, in opposition to the contract, and inconsistently with

it, use and employ the property in a manner not allowable to the giver or seller." It does not appear in the report of this case in what manner the purchaser acquired notice of the covenant, whether from the deed or from some other source, nor what the character of the notice was.

In London v. Gomm, 20 L. R. Ch. Div. 562 (1882), it was held that the doctrine of Tulk v. Moxhay applied only to restrictive covenants.

In Carter v. Williams, 9 L. R. Eq. Cas. 678, a grantee in fee of a piece of land entered into a separate agreement with the grantor that during twelve and one half years no building on the premises should be used for the sale of ale, beer, etc. Relief by injunction was granted against the grantee, but was refused as to his tenant, who had no notice of the covenant.

But in Wilson v. Hart, 1 L. R. Ch. App. Cas. 463, the owner of the freehold had entered into a covenant with the previous owner that a building should not be used as a beer shop. The house was afterwards let to a tenant from year to year, without express notice of the covenant, and it was held that, although the covenant did not run with the land, the defendant was bound by it in equity. It will be noticed that this case differs from the preceding one, in that the covenant was contained in the deed by which the lessor acquired title, whereas in the preceding case the agreement restricting the use of the premises was by a separate writing or agreement of which the tenant had no notice. The court there drew the distinction between a covenant running with the land and a personal covenant as follows: "It was, as I think, a covenant applying merely to the personal use and enjoyment of the land by the grantee, and not to the permanent user of the land itself."

In Re Nisbet and Pott's Contract, 1 L. R. (1906) Ch. Div. 386, 405, a covenant respecting the use of land was under consideration, and Lord Justice Romer spoke as follows: "I think the law is that such a covenant, when validly created, binds the land in equity and can be enforced as against subsequent owners of the land, subject only to the limitation that, being equitable, it cannot be enforced as against a bona fide purchaser of the land—that is to say, of the legal estate—

without notice." The character of the notice was not discussed, but the covenant as to restriction of the land was contained in the deed, and the decision proceeded upon the theory that subsequent purchasers were constructively charged with notice of all covenants contained in the chain of title.

Of the American courts, Massachusetts and New York furnish the best illustrations of the subject under consideration.

In the case of Bronson v. Coffin, 108 Mass. 175, 11 Am. 335, Judge Gray reviewed and distinguished many cases, contended there was no difference between restrictive and affirmative covenants, and announced the general rule as follows: "In order to make a covenant run with the land of the covenantor and bind his heirs and assigns, the covenantee must, according to all the authorities, have such an interest in that land as to amount to a privity of estate between the parties to the covenant. * * * An obligation, duly expressed, that the structures upon one parcel of land shall forever be of a certain character, for the benefit of an adjoining parcel, is equally a charge upon the first parcel, whether the obligation is affirmative or merely restrictive, and whether the affirmative acts necessary to carry the obligation into effect are to be done by the owner of the one or the owner of the other." In that case the owner of a farm conveyed a strip of land to a railroad corporation by a deed containing a clause that the owner, his heirs and assigns, would make and maintain sufficient fences through the whole length of that part of the railroad which should run through the farm; the covenant to be perpetual and to bind all persons who should become owners of the land on either side of the railroad. It was held that the covenant gave the grantee an interest in the nature of an easement in the adjoining land of the grantor which ran with the land. It will be observed that the terms of the covenant were contained in the deed which constituted part of the chain of title, and the court held that the deed conveyed to the grantees an interest in the nature of an easement, thus creating a sufficient privity of estate between them and his assigns to support the covenant.

In Parish v. Whitney, 3 Gray, 516, a deed of conveyance contained a provision that the grantee, his heirs and assigns, would erect and

maintain a fence between the land granted and other lands of the grantor. The grantee then conveyed the premises to a third party, who in turn conveyed to plaintiff. The last deed was silent with respect to the covenant to erect and maintain a fence. Plaintiff brought an action of contract on the covenant against his immediate grantor, and the court held that the stipulation as to the erection and maintenance of a fence was not a covenant running with the land; that it was a personal agreement of the grantee, made as part of the consideration of the grant and evidenced by his acceptance of the deed, binding him and his legal representatives, but which did not affect the estate.

In Inhabitants v. Carver, 16 Pick. 183, the town of Plymouth granted certain land on condition that the grantee should become bound by a bond to maintain a portion of the highway passing by the land. The grantee gave a bond by which he bound himself, his heirs, executors, administrators, and assigns, to perform the condition. A portion of the land was subsequently conveyed by several conveyances which made no mention of the obligation resting upon the original grantee. In an action by the original grantor against a subsequent grantee it was held that the covenant was a personal obligation of the obligors and not a covenant running with the land.

Another Massachusetts case which may be mentioned in this connection is Hurd v. Curtis, 19 Pick. 459. Several owners of mills upon a certain stream entered into an indenture in which, for themselves, administrators, and assigns, respectively, they covenanted with each other and respective heirs, administrators, and assigns that they would erect and use wheels of a certain construction in their mills. In an action upon the covenant, brought by one of the parties to the indenture against a grantee of one of the other parties to the indenture, who took conveyance of the premises with full notice of the agreement, it was held that the covenant was purely personal between the parties to the contract, and did not run with the land or bind the grantee.

It was decided in Martin v. Drinan, 128 Mass. 515, that an agreement by the grantee in a deed poll to keep and repair a building on adjoining land of the grantor was not a covenant and would not sus-

tain an action by a subsequent grantee of adjoining land. See also Badger v. Boardman, 16 Gray, 559, and Kennedy v. Owen, 136 Mass. 199.

In New York it was held that a covenant by the owner of land not to permit a gristmill to be erected thereon was a personal contract, binding only the covenantors and their personal representatives; that it granted no interest in the premises and created no charge thereon. Another interesting case is that of Hodge v. Sloan, 107 N. Y. 244, 17 N. E. 335, 1 Am. St. 816, where certain premises were granted by Hodge to Sloan's grantor, subject to a covenant that no sand should be sold from the premises. Sloan's deed, however, was silent as to the condition; but he had full knowledge of the covenants contained in the deed of his grantor. In an action brought by the original grantor to restrain the last grantee from removing the sand from the premises, it was held that the latter was bound by the covenant because he took the title with knowledge of the restrictions that had been placed upon it. The court held that it was not necessary that the covenant should be one technically running with the land, and that it was sufficient if the purchaser had notice of it. The decision is founded upon the doctrine of Tulk v. Moxhay. The case was decided by a divided court.

In Trustees v. Lynch, 70 N. Y. 440, 26 Am. 615, it was held that adjoining owners of land might by grant impose mutual and corresponding restrictions upon the lands belonging to each to secure uniformity in the structure and position of buildings upon the entire premises, or to reserve and confine the lands for certain purposes. In Plumb v. Tubbs, 41 N. Y. 442, a deed contained a condition that the grantee, his heirs and assigns, should not at any time manufacture or sell, to be used as a beverage, any intoxicating liquors, or permit the same to be done, on the premises conveyed, unless the grantor, his heirs and assigns, should sell other land in the same village without such restrictions, or should themselves manufacture or sell, or permit on their lands to be manufactured or sold, such liquor to be used as a beverage. It was held that the condition was valid, not repugnant to the grant, and that the conveyance imposing a forfeiture, giving a right of re-entry upon breach of the condition, might be enforced.

In Stines v. Dorman, 25 Oh. St. 580, it was held that a stipulation in a deed of conveyance whereby the grantee, in part consideration of the conveyance, agreed for himself, heirs, and assigns that the premises conveyed should not be used or occupied as a hotel so long as certain other property owned by the grantor should be used for that purpose, bound both the grantee and all claiming under him, and that injunction would lie to enforce the stipulation.

Tardy v. Creasy, 81 Va. 553, 59 Am. 676, is an interesting case and was decided by a divided court. Talbert deeded to Tardy five and one half acres of land, granting him the exclusive privilege of conducting certain lines of business thereon in connection with adjoining lands of the grantor. Talbert then deeded an acre of the adjoining land to Roach, subject to the restrictions already granted to Tardy. Roach then deeded to Creasy, without any restrictions whatever. Tardy undertook to restrain Creasy from carrying on the business upon the acre conveyed to him upon the ground that he was bound by the covenant in the original deed. A majority of the court held that the covenant was a mere personal contract between Talbert and Tardy, and did not run with the land so as to bind the assigns.

In our own court the distinction between a covenant running with land and a personal contract is illustrated by the cases of Shaber v. St. Paul Water Co., 30 Minn. 179, 14 N. W. 874, and Kettle River R. Co. v. Eastern Ry. Co. of Minn., 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111. In the former case the water company, although not an owner of the land, was held bound by its covenant not to divert water from a certain lake. In the latter case an agreement for the exclusive transportation of the products of the land by a railroad company was held to be a personal agreement between the grantor and the company. In the case now before us it must be admitted at once that the contract between appellants and Petterson did not create an estate or interest in the land which was enforceable against the subsequent holder of the legal title. It did not constitute a covenant running with the land, although such covenants may be created by indenture other than a conveyance constituting part of the chain of title.

The next question is more difficult, viz.: Could the provisions of the contract be enforced by appellants against respondents within the

equitable doctrine announced in Tulk v. Moxhay? The terms "equity in the lands" and "equity attached to the land," as employed in several of the decisions, lead to some confusion. It would seem, however, that whatever equity may be said to attach to the land, enforceable against subsequent grantors, arises only in cases where the covenant is contained in some deed in the chain of title. In such a case the grantee is charged with constructive notice, and is presumed to have taken the title subject to the covenant. If the covenant is in the nature of an incumbrance, restrictive or affirmative, the consideration is presumably adjusted to the condition.

Reference to a few of the cases will serve to illustrate this view of the question. In Hodge v. Sloan, supra, the court say: "The contract was good between the original parties, and it should, in equity at least, bind whoever takes title with notice of such covenant. By reason of it the vendor received less for his land, and the plain and expressed intention of the parties would be defeated if the covenant could not be enforced as well against a purchaser with notice as against the original covenantor." In Trustees v. Lynch, supra, it was said: "Here each successive grantee, from Beers, the covenantor, down to and including the defendant Lynch, the present owner, not only had notice of the covenant and all equities growing out of the same, but took their title in terms subject to it and impliedly agreeing to observe it." In Stines v. Dorman, supra: "The law does not prohibit a grantor from imposing limitations or restrictions on the estate, nor does it require the grantee to take a greater interest than he purchases. If the effect of the stipulation is not to accomplish an illegal purpose it is lawful, and where it affects the land or the mode of its enjoyment its effect is to bind all deriving title under the conveyance in which the restriction is found." See also Badger v. Boardman, supra.

The contract under consideration was not, in itself, a conveyance. It created no interest in the land, did not have the effect of conveying any part or parcel thereof, was not connected with the chain of title, and hence was not a document entitled to be of record, as provided by sections 3334 and 3357, R. L. 1905. If the instrument was not a conveyance of an interest in real estate, and was not entitled to be

recorded, then its record did not constitute constructive notice to Smith, and his assigns. The contract was purely personal between the parties who executed it, and created no interest in or charge upon the land, although it might have been made effective against assigns if embraced as a covenant in the deed to Smith. The fact that the contract was executed by Petterson on behalf of his heirs, administrators, and assigns is wholly immaterial. As to the contract, respondents did not become the "assigns" of Petterson in taking title by quitclaim deed, silent as to the contract. There was no privity of relation. No such agreement outside of the deed was entered into by Smith, so far as appears from the record. Appellants may, in good faith, have relied upon Petterson and assumed that he would not convey the premises unless subject to the restriction; but he did convey without reference to the contract and the exclusive remedy is on the contract. The court found that the deed conveying the premises to Smith was executed for a valuable consideration; but it cannot be presumed that Smith, having no actual knowledge of the contract, assumed the burden of the restricted use of the premises. In what manner Smith's assigns might have been affected, had he become obligated by contract dehors the deed, it is unnecessary to decide. In Napa Valley Wine Co. v. Boston Block Co., 44 Minn. 130, 46 N. W. 239, 20 Am. St. 562, no privity of contract existed between the former and the later lessees, and to that extent the case is similar and in point.

We have examined the case of Lewis v. Gollner, 129 N. Y. 227, 230, 29 N. E. 81, 26 Am. St. 516; but the facts were different, and the principle there applied has no bearing here. It was there held that the wife took the title with full knowledge of all the facts and for the purpose and with the intent of aiding and protecting her husband in his effort to avoid the contract, and that injunction would lie to restrain both herself and her husband from violating the agreement which he had entered into. We have also examined the case of Brewer v. Marshall, 18 N. J. Eq. 337, also reported in 19 N. J. Eq. 537, 97 Am. Dec. 679. Both opinions contain valuable reading on the subject, but the decision is not directly in point.

Affirmed.