# JOHN ANDERSON v. OTTER TAIL POWER COMPANY.[1]

June 29, 1928.

No. 26,707.

**Construction of covenant by grantee in deed of dam site to furnish water power to grantor and his heirs forever.**

A deed through which defendant derived title to eight acres of land bordering a river and upon which existed a dam generating power for a saw and feed mill, operated by one of the grantors, contained a covenant, "that in the event of the erection of a new dam on said premises, the said Charles Anderson [one of the grantors] and his heirs and assigns forever shall have power to the extent of twenty horse for their use free of charge to them in the manufacture of lumber and feed." After defendant acquired the title it purchased a dam site about four miles down the river whereon it constructed a dam at such height that the water is so raised at the first dam site that it is impracticable there to erect a new dam. It is *held*:

**No breach of covenant and no basis for more than nominal damages.**

1. Assuming that the covenant to furnish power runs with the land and binds defendant as owner thereof, the event upon which it is to operate in plaintiff's favor has not occurred, and therefore there has been no breach and no basis upon which a verdict for more than nominal damages may be predicated.

**Damages for raising water over dam site must be based on rights reserved by the covenant.**

2. Granting that defendant by the erection of the lower dam at such a height that it backs the water over the dam site acquired from plaintiff's testate has committed a wrong, the damages therefor must be based upon the rights reserved by the covenant mentioned.

**Building of lower dam is not event specified in the covenant.**

3. It cannot be held that the building of the lower dam is the event which under the covenant entitles the grantor in the deed to receive the 20 horsepower.

Waters, 40 Cyc. p. 763 n. 96; p. 764 n. 2.

[1]Reported in 220 N. W. 404.

Defendant appealed from a judgment of the district court for Otter Tail county, Roeser, J. Reversed.

*N. F. Field* and *Cyrus A. Field,* for appellant.

*Eriksson & Zumwinkle* and *Harold Ranstad,* for respondent.

HOLT, J.

Appeal by defendant from a judgment awarding plaintiff $6,510 damages for the breach of a covenant in a deed.

The deed was made by plaintiff's testate, Caroline Anderson, her husband Charley Anderson joining, October 2, 1903, and duly recorded the next day in the office of the register of deeds of Otter Tail county, where the land is located. The grantee was E. J. Webber, who took and held the title for himself and three associates. The land herein concerned was government lot 4 in section 26, township 134 north of range 42 west, said county. The Red River of the North, known also as Otter Tail River, constitutes the south boundary of the lot which contains about 16 acres. Adjoining lot 4 on the east, or upstream, is government lot 3, then owned by Charley Anderson, now by his heirs, being the same persons represented by plaintiff. Anderson's grantor, one Oliver, had erected a dam on lot 4 in 1881 and had operated it continuously for grinding feed and sawing logs until he conveyed in 1900; so that the Andersons, when the deed was given, had acquired a prescriptive right of flowage above the dam at the height then maintained. The dam is referred to as the Oliver dam. The north end of the dam abutted lot 4 about 50 feet below the west line of the east 8 acres reserved therefrom by the grantors when they conveyed to Webber by the deed mentioned, which contains the covenant here involved and others, reading as follows, viz:

"Reserving, however, unto said first parties the mill building and machinery and the barn now erected on said premises, which buildings said second party agrees to move free of cost to said first party on to said part of lot four (4) reserved to said first party, at any time that said second party shall desire to use the ground occupied by said buildings, * * *.

"As a further consideration as and for the purchase price of said premises, the second party hereby agrees to and with said first parties, that in the event of the erection of a new dam on said premises, the said Charles Anderson and his heirs or his assigns forever shall have power to the extent of twenty horse for their use free of charge to them in the manufacture of lumber and feed. In case the dam shall be rendered inoperative by the act of God or of the elements, it is further agreed that the party of the second part shall not be liable for any damages whatsoever on account of inability to furnish the power herein agreed.

"The party of the first part further agrees, that in case of their wishing to dispose of their twenty horse power interest herein reserved that the party of the second part shall have the first option to purchase same at such price as is offered by another intending purchaser.

"The second party hereto agrees, that he will not engage in the business of sawing lumber or grinding feed on the property and the first parties agree that they shall not engage in any business that will conflict with the second parties business."

After the deed was delivered the mill was operated by Charley Anderson. No building was moved by the grantee. In 1907 there was a break in the dam. Repairs were made, but a dispute arose as to whether Webber and associates should pay therefor. Finally the dispute was adjusted by a written contract between Charley Anderson and McLean, one of the associates of Webber acting in behalf of all. The substance of the agreement was that Anderson should be paid $190, he to complete the work before May 1, 1908, making the dam as good and of the same height as when sold to Webber. The contract ended with this provision:

"And it is further agreed that after said repairing, and until the placing and putting in of a new dam by said parties of the first part [Webber and associates], or their assigns, the said party of the second part is to have the free use of said water power and dam to the extent of twenty horse power in consideration of his keeping the same in repair during the use thereof by him."

In 1910 or 1911 the dam went out or fell into disrepair. Charley Anderson removed the mill building, sold and disposed of the machinery, shafting, and turbines. Previously the barn had burned, and nothing remained on the 8 acres deeded to Webber to show that any saw or feed mill or developed water power had ever existed thereon, except some remnants of the dam and spillway. Webber and associates sold the 8 acres in lot 4 to defendant in the fall of 1924. The conveyance was silent with reference to the covenant now invoked by plaintiff; but the president of defendant had examined the deed and contracts of the Andersons above referred to, and possessed both actual and constructive knowledge of the covenant to furnish 20 horsepower in the event a new dam was constructed on the site. Defendant also acquired a site for a dam some 4 miles down stream, referred to herein as the Friberg site, whereon in 1926 it completed a dam with 30-foot head for the production and distribution commercially of electric power. This dam backs the water up to and over the Oliver dam site, so that the jury found it not practicable now to construct a dam at the latter place for the development of power. This finding is well supported.

One of the main defenses urged is that the covenant upon which plaintiff relies does not run with the land, and there being no covenant of like nature in the deed by which defendant acquired the Oliver dam site it cannot be held in damages for a breach. There is much in the transaction tending in that direction. The covenantee is not the owner of the land reserved out of the tract conveyed. It runs to the husband of such owner. With him was made the subsequent contract relative to the repair and maintenance of the dam. The argument is also made that this covenant relates to a new dam not in esse, and the law is that covenants in respect to matters not in esse do not run with the land. It is admitted that there are well recognized exceptions, such as covenants respecting future party walls.

The opinion of the writer is that the covenant may be held a covenant running with the land. It did not relate to or obligate the covenantor to construct a new dam, but it does relate to the potential water power then existent in the dam site conveyed. It

also appears that connected with the dam site were flowage rights granted by the grantor Charley Anderson, not only as owner of the inchoate rights of his wife's interest in lot 4 but as the owner of lot 3. The principles applied and discussed in Shaber v. St. Paul Water Co. 30 Minn. 179, 14 N. W. 874, would seem to class the covenant here among those running with the land. There is nothing in Sjoblom v. Mark, 103 Minn. 193, 114 N. W. 746, 15 L.R.A. (N.S.) 1129, 14 Ann. Cas. 125, which is decisive to the contrary. In Kettle River R. Co. v. Eastern Ry. Co. 41 Minn. 461, 473, 43 N. W. 469, 6 L. R. A. 111, the court says:

"There is a growing tendency to incorporate equitable doctrines with common law rules, and, in equity, covenants relating to land, or its mode of use or enjoyment, are frequently enforced against subsequent grantees with notice, though there is no privity of estate, and the covenants do not strictly run with the land."

Particularly is this applicable to restrictive covenants. In this case the covenantor burdened the acquired land, which possessed by nature and by prescriptive right adaptability for the generation of power, for the use and benefit of one of his grantors and his heirs and assigns forever, in a certain amount, in the event a new dam should be constructed thereon. The covenant did not attach to the existing dam. But assuming, without deciding, that this covenant to furnish 20 horsepower is a covenant running with the land and that through the act of defendant, in erecting and maintaining the Friberg dam, it is now impracticable to produce power by the erection of a new dam upon lot 4, we cannot avoid the conclusion that this judgment for damages must be reversed.

It is entirely clear that the grantee Webber did not covenant or agree to construct a new dam upon the premises conveyed to him. That was left entirely optional with him and his assigns. No obligation to furnish any power arose until the construction of a new dam. No new dam has been constructed; hence the right to demand power has not accrued and consequently there has been no breach of any covenant upon which damages can be predicated. In order to obtain power from the old dam Charley Anderson, the

covenantee, was obligated to maintain it at his own expense.   He let it go into disrepair and abandoned any advantages derived from the power therefrom.   The mere possibility that the owners of the west half of lot 4 might erect a dam thereon does not furnish a basis for assessing damages.   Nor does the fact, found by the court, that Webber so contemplated when he accepted the deed.

It may be suggested that a dam site might be so well adapted for profitable generation of power that its utilization would be almost certain.   But the evidence as to this dam site indicates that even had the dam below never been built it would be extremely doubtful that any owner of the west 8 acres of lot 4 would construct a new dam thereon, especially since it would require the one so doing to turn over free of charge 20 horsepower of the product of the dam.   With a dam in existence whose whole power went to the exclusive benefit of Charley Anderson, he concluded it did not pay to keep it in repair and voluntarily abandoned all use thereof.   The Andersons permitted the enjoyment of the covenant to rest upon the contingency or event which was optional with the covenantor or his assign, the defendant,—assuming that it runs with the land.   The language is so clearly to that effect that it is not open to a different view.

Assuming that the contracts and deed involved were drafted by the vendee and hence to be construed most favorably to the vendors, it is impossible to find any promise or obligation by the vendee ever to construct a new dam or to furnish power from any other source than from that generated by a new dam upon the land conveyed, in the event that the owner thereof should choose to build one.   No reformation of the covenants in the deed is asked.   Obligations not found therein cannot be interpolated.   Courts may not make contracts for litigants.   To build a new dam involves the expenditure of large sums of money.   There is nothing in the instruments between Andersons and Webber or his associates which suggests that the latter should do so, unless at least they came to the conclusion that it was profitable for them and they were able to do so.   But there is nothing which requires them even to consider the undertaking except at their convenience, which never may come to pass.

We are of the opinion that the record fails to show any basis for awarding damages for breach of any covenant.

But it was argued that defendant by the construction of the Friberg dam at such height that the water is set back over the Oliver dam site has destroyed the practicability of a dam there, and that this conduct gives a right of damages. Grant that this is a wrong, the resulting damages must nevertheless be assessed upon the basis of the covenant mentioned, and no such substantial damages can be estimated upon an event wholly dependent upon whether the owner of the site chooses to build a dam, there being no circumstances inhering in or connected with the property conveyed or with that reserved which would induce the building thereof at any determinable time.

The position was also taken that defendant has combined the Friberg dam site with that of the Oliver so that the power developed may be said to be the resultant of both, and therefore the event has occurred which entitles Anderson and his heirs to the 20 horsepower. We do not think the covenant can be made to relate to a dam constructed at a site remote and unconnected with the one referred to in the deed. Such being our conclusion, other grounds urged for a reversal need not be referred to.

The judgment is reversed.

STONE, J. took no part.