**FEDERATED RETAIL HOLDINGS, INC., Respondent,**

v.

**COUNTY OF RAMSEY, Relator.**

No. A11–2093.

Supreme Court of Minnesota.

Sept. 19, 2012.

554

Thomas R. Wilhelmy, Christopher A. Stafford, Fredrickson & Byron, P.A., Minneapolis, MN, for respondent.

John J. Choi, Ramsey County Attorney, M. Jean Stepan, Assistant County Attorney, St. Paul, MN, for relator.

## OPINION

DIETZEN, Justice.

The issue presented in this case is whether the tax court has subject-matter jurisdiction to consider the value of the leasehold interest in real property adjacent to the tax parcel on appeal. The Ramsey County Assessor determined that the fair market value of the tax parcel, which is improved by a Macy's department store operated by respondent Federated Retail Holdings, Inc., was $17,000,000 for the assessment dates of January 2, 2006, and January 2, 2007. The assessor included the value of a leasehold interest held by Federated in the parcel adjacent to the tax parcel in its value determination. Federated timely filed petitions under Minn.Stat. ch. 278 (2010), challenging the assessor's market value determinations. The tax court held that Federated's ownership interest in the tax parcel included the leasehold interest in the adjacent property, but concluded that the value of the leasehold interest was not subject to the jurisdiction of the tax court and therefore did not include it. The relator, Ramsey County, filed this certiorari appeal. We conclude that the tax court has subject-matter jurisdiction to consider the value of Federated's leasehold interest in adjacent property because it constitutes real property of the tax parcel under Minn.Stat. § 272.03, subd. 1 (2010), and affects the fair market value of the tax parcel. Consequently, we reverse and remand.

Federated has an ownership interest in the property now occupied and operated as a Macy's department store at the Rosedale Center Mall, 1815 Highway 36W in Roseville.[1] The Macy's department store prop-

---

1. In the years leading up to the assessment dates, Macy's experienced a significant series of management and branding changes. The 1992 owner of the Rosedale Center Mall, Equitable Life Assurance Company (Equitable), built a new Dayton's department store as part of an agreement with the Dayton Hudson Corporation. The department store operated under the Dayton's name until 2001 when the Dayton Hudson Corporation changed its

erty is the subject of this tax appeal. It is referred to as Parcel 0004[2] or the tax parcel.

Macy's is a three-level department store, with a gross leasable area of 259,453 square feet that is physically attached to the Rosedale Mall. The mall has approximately 164 stores encompassing a gross leasable area of 1,150,000 square feet. Macy's has 214,017 square feet of gross building area, and it is one of three major anchor department stores at the mall.

Additionally, Federated has a leasehold interest in Parcel 0005 at the Rosedale Mall,[3] which is contiguous and adjacent to Parcel 0004. Parcel 0005 consists of 45,436 square feet of basement space that is physically attached to the tax parcel via an escalator. Generally, Parcel 0005 is improved with a structure that is used for common areas of the mall, and the basement space is used by Macy's as administrative/retail space.

The relevant ownership history of Parcel 0005, and the leasehold rights of the owner of Parcel 0004 to the exclusive use of the basement space of Parcel 0005, date back to a 1992 lease agreement[4] (the Equitable lease) between Equitable, as the owner-landlord of Parcel 0005, and Dayton's, as the tenant of Parcel 0005 and owner of Parcel 0004. The Equitable lease provided, among other things, that Dayton's would construct a new multi-level department store at the Rosedale Mall, and would receive leasehold rights to the exclusive use of the lower level of Parcel 0005 provided that the space is used "solely for an integrated part of the operation of tenant's department store." The Equitable lease gave the new Dayton's department store on Parcel 0004 an additional 45,435 square feet of contiguous administrative/retail space on Parcel 0005. Eventually, the Equitable lease was assigned to Federated in accordance with its terms. Thus, Federated, as the current owner of Parcel 0004, has a long-term leasehold interest in the basement space of Parcel 0005, provided that the space is integrated into and operated as part of the department store on Parcel 0004.

The County Assessor determined that the fair market value for Parcel 0004 was $17,000,000 for the January 2, 2006, and January 2, 2007, tax assessment dates, which included the value of Federated's leasehold interest in Parcel 0005. Federated filed appeals for both tax years.

At trial, Federated and the County presented appraisal testimony.[5] Federated's appraiser, Daniel T. Boris, presented an appraisal report that valued Parcel 0004 for the 2006 and 2007 assessments. He relied upon the market data and income approaches to determine the fair market value, but did not use the cost approach because he concluded it was not a reliable

name to Target. That same year, Target converted its Dayton's chain to Marshall Field's stores. In 2004, Target sold both Marshall Field's (including the former Dayton's stores) and its Mervyn's assets to the May Company. In 2006, the May Company merged with Federated, and Federated rebranded all of its acquired stores as Macy's.

2. Parcel 0004 has a Property Identification Number of 09.29.23.42.0004.

3. Parcel 0005 has a Property Identification Number of 09.29.23.42.0005.

4. The tax court listed the agreement date as 1988, and Ramsey County references this date, but there is no support in the record for this date. The lease agreement itself lists the effective date as February 18, 1992, with a commencement date of August 8, 1996.

5. The two experts disagreed on a wide variety of issues regarding the valuation of Parcel 0004. Only those disagreements relevant to this appeal are discussed here.

indicator of value due to the age of the building and its economic obsolescence in the marketplace. Boris concluded that the fair market value of Parcel 0004 was $12,600,000 as of January 2, 2006, and $13,700,000 as of January 2, 2007. Boris did not include any contributory value of leasehold rights for Parcel 0005 on the basis that the County Assessor had not consolidated the two parcels, and therefore it was not appropriate to transfer value from Parcel 0005 to Parcel 0004.

The County's appraiser, Dwight W. Dahlen, presented an appraisal report that valued Parcel 0004 at $19,465,000 for the 2006 and 2007 assessment dates. Dahlen testified that the most relevant approaches to valuation were the income capitalization approach and the direct sales comparison approach. Dahlen used a wider variety of regional department stores in the comparison approach than Boris, and testified that the tax parcel included the parts of Parcel 0005 that were part of the Macy's department store. Dahlen testified that since 1991 the leased basement space contained within Parcel 0005 had been included by the County as part of the value of Parcel 0004. Dahlen relied in part on a handwritten pencil notation concerning the leased basement space contained on the assessor's field card, which states: "division 63660 processed—new Dayton's and basement of old Dayton's on this description parcel 0004," as evidence that Parcel 0004 and Parcel 0005 were to be considered together for purposes of the valuation of Parcel 0004.

In its post-trial brief, Federated argued that any valuation of Parcel 0004 that included the value of the leasehold interest in Parcel 0005 was not within the subject-matter jurisdiction of the tax court. Federated also argued that Dahlen's decision to include the leasehold value of Parcel 0005 in assessing Parcel 0004 was improper because no steps had been taken to consolidate Parcel 0004 and Parcel 0005 for tax purposes. The County responded that the value of the leasehold interest in Parcel 0005 was properly included in the valuation of Parcel 0004 because it added value to Parcel 0004 on appeal. The County also argued that the value of leasehold rights in Parcel 0005 satisfied the definition of real property in Minn.Stat. § 272.03, subd. 1.

The tax court filed findings of fact, conclusions of law, and an order concluding that the fair market value of the tax parcel was $14,894,830 and $15,245,024 for the January 2, 2006, and January 2, 2007, assessment dates, respectively. The tax court found that Federated's ownership interest in Parcel 0004 included its leasehold interest in Parcel 0005. Specifically, Federated was entitled to

> rent-free use of approximately 45,436 square feet of store area located within an adjoining plat, which includes a first and second floor area of in-line retail shops and enclosed Rosedale Center Mall commons area. This area is currently subject to a year lease subject to renewals for up to 99 years and includes some Macy's administrative office area.

*Federated Retail Holdings, Inc. v. Cnty. of Ramsey,* Nos. 62–CV–08–5061, C0–07–4069, 2011 WL 3821296, at *1 (Minn. T.C. Aug. 23, 2011).

The tax court concluded, however, that the value of Federated's leasehold rights in Parcel 0005 was not subject to the jurisdiction of the tax court because no steps had been taken to follow the statutory process for consolidating the two tax parcels and the petition only referenced Parcel 0004. *Id.* at *4–5. Thus, the tax court concluded that the County's assessment should not include the value of the leased basement space in Parcel 0005.

Federated moved for amended findings of fact and conclusions of law, arguing that the tax court had erroneously included the square footage of the leased basement space in Parcel 0005 in reaching a value for Parcel 0004. The tax court granted Federated's motion and reduced the square footage of the building area for the tax parcel from 259,453 to 214,017 square feet to exclude Parcel 0005's square footage, and reduced Parcel 0004's valuation to $10,590,888 for January 2, 2006, and to $12,575,281 for January 2, 2007. This certiorari appeal followed.

## I.

On appeal, the parties raise two issues. First, whether the tax court has subject-matter jurisdiction to consider the value of a leasehold interest in real property located adjacent to the tax parcel on appeal. Second, whether Federated's leasehold interest in Parcel 0005 should be included in the determination of the fair market value of Parcel 0004 pursuant to Minn.Stat. § 272.03, subd. 1. We first address subject-matter jurisdiction.

Federated argues that the tax court lacked subject-matter jurisdiction to determine the value contributed by Parcel 0005 because Federated challenged only the assessment for Parcel 0004; the petition did not specifically list Parcel 0005. As a result, it argues that the leasehold in Parcel 0005 is not before the court.

We review a tax court decision "to determine whether the court lacked jurisdiction, whether the court's decision is supported by the evidence and is in conformity with the law, and whether the court committed any other error of law." *Eden Prairie Mall, LLC v. Cnty. of Hennepin,* 797 N.W.2d 186, 189 (Minn.2011). Errors of law are reviewed de novo. *Id.* But we "will not disturb the tax court's valuation of property for tax purposes un-

less the tax court's decision is clearly erroneous, which means the decision is not reasonably supported by the evidence as a whole." *Harold Chevrolet, Inc. v. Cnty. of Hennepin,* 526 N.W.2d 54, 57 (Minn.1995).

Subject-matter jurisdiction is the court's authority to hear the type of dispute at issue. *Seehus v. Bor-Son Const., Inc.,* 783 N.W.2d 144, 147 (Minn.2010). The tax court's authority depends, in the first instance, on the claims made. *See id.* at 148 (describing this court's task as determining whether the lower court "had subject-matter jurisdiction over Seehus's claim"). The question of whether subject-matter jurisdiction exists is a question of law for the court. *Hale v. Viking Trucking Co.,* 654 N.W.2d 119, 123 (Minn.2002).

The tax court is an independent agency of the executive branch with statewide jurisdiction as the "sole, exclusive, and final authority" to hear and determine "all questions of law and fact arising under the tax laws of the state," subject to review by the supreme court. Minn.Stat. § 271.01, subd. 5 (2010). The tax court has subject-matter jurisdiction over petitions regarding assessed property taxes through chapter 278. Minn.Stat. §§ 278.01–.02 (2010). The tax court's jurisdiction is limited to the real property described in the petition. Minn.Stat. § 278.02 (stating that a property tax petition must "clearly identify the ... land involved"); *see In re Objections and Defenses to Real Property Taxes,* 410 N.W.2d 321, 323 (Minn.1987) (noting that Minn.Stat. § 278.02 confers jurisdiction and standing to bring tax petitions). The tax court may determine whether a property has been "partially, unfairly, or unequally assessed"; whether the property has been "assessed at a valuation greater than its real or actual value"; whether the tax levied is illegal; or whether the property is tax exempt. Minn.Stat. § 278.01, subd. 1. A petition pursuant to section

278.01 is the exclusive remedy to contest an unfair, unequal, or erroneous property tax valuation. *Evanson v. Comm'r of Taxation*, 280 Minn. 559, 561, 159 N.W.2d 259, 261 (1968).

▮ To answer the jurisdictional question, we must examine whether the tax court has the statutory authority to include the value of the leasehold interest in Parcel 0005 in determining the fair market value of the tax parcel on appeal. It is undisputed that Parcel 0004 was identified in the tax petition; therefore, the tax court has subject-matter jurisdiction to determine the fair market value of the real property of the tax parcel on appeal. Minn.Stat. § 278.02. Thus, the focus of the question we must answer is whether a leasehold interest in adjacent, contiguous property is part of the real property of the tax parcel on appeal. Two statutes are relevant to this determination: Minn.Stat. § 272.03, subd. 1 (2010), and Minn.Stat. § 273.12 (2010).

The first of these statutes, section 272.03, subdivision 1(a), defines real property for property tax purposes to include "the land itself ... and all rights and privileges belonging or appertaining to the land." Pursuant to the plain language of section 272.03, the tax court has jurisdiction to determine all rights and privileges belonging or appertaining to Parcel 0004. *See also* Minn.Stat. § 278.02. Additionally, section 273.12 provides that when assessing the value of a property for tax purposes, the tax assessor must "determine the sale or market value of the property to be assessed, and [ ] in determining what such market or sale value is, the duty rests upon him[/her] to take into consideration

[e]very element and factor affecting such valuation." *Schleiff v. Cnty. of Freeborn*, 231 Minn. 389, 394, 43 N.W.2d 265, 268 (1950) (explaining requirements of predecessor to Minn.Stat. § 273.12).

▮ Reading the authority provided by these two statutes together, we conclude that the tax court has subject-matter jurisdiction over a leasehold interest in property located adjacent to a tax parcel on appeal under section 278.02 provided that the leasehold interest constitutes real property of the tax parcel within the meaning of section 272.03, subdivision 1. Specifically, the leasehold interest in the adjacent parcel must constitute "a right or privilege belonging or appertaining" to the tax parcel on appeal, and must legitimately affect the fair market value of the tax parcel.[6] As a result, the tax court has the authority to determine the County's claim.

## II.

▮ Having determined the tax court has subject-matter jurisdiction to consider the County's claim, we must next determine whether the leasehold interest in Parcel 0005 constitutes real property within the meaning of section 272.03, subdivision 1, and whether the leasehold affects the value of Parcel 0004. The County argues that Parcel 0004's leasehold interest in the basement space in Parcel 0005 is part of the real property of the tax parcel within the meaning of Minn.Stat. § 272.03, subd. 1. Federated counters that the lease on Parcel 0005 does not create any rights that run with the land of Parcel 0004. The question of whether an interest in real property is a right or interest that belongs or appertains to the tax parcel is a ques-

---

6. Federated's argument that the tax court's consideration of Parcel 0005 would constitute double taxation is foreclosed by this conclusion. The potential impact on the fair market value of Parcel 0005 caused by the lease to Federated is outside the scope of the issues presented on appeal and should be decided in a future petition by the owner of Parcel 0005, if necessary.

tion of law that we determine de novo. *Cf. Kettle River R.R. Co. v. E. Ry. Co.*, 41 Minn. 461, 471–72, 43 N.W. 469, 473–74 (1889) (conducting a de novo review of whether a covenant runs with the land); *Shaber v. St. Paul Water Co.*, 30 Minn. 179, 183, 14 N.W. 874, 875 (1883) (concluding after a de novo review that a covenant to maintain water in a lake at a certain stage ran with the land).

■ Section 272.03, subdivision 1(a), states that real property "includes ... all rights and privileges belonging or appertaining to the land...." While we have never explicitly stated so in the tax context, the phrase "belonging or appertaining to the land" generally refers to covenants that run with the real property itself. *See also Petition of S.R.A., Inc.*, 213 Minn. 487, 493, 7 N.W.2d 484, 487 (1942); *Mackey v. Harmon*, 34 Minn. 168, 171–72, 24 N.W. 702, 703–04 (1885). A covenant that runs with the land is a contractual obligation with certain real characteristics, such that it attaches to land rather than being a personal obligation of the grantor. *Pelser v. Gingold*, 214 Minn. 281, 285, 8 N.W.2d 36, 39 (1943).

■ Three legal factors must exist to create a property interest that runs with the land. First, the parties must be in privity of estate when the covenant is made concerning the land or estate. *Kettle River*, 41 Minn. at 471, 43 N.W. at 473. Privity of estate describes the legal relationship created between the parties to the subject property; for example, the legal relationship could be a grantor and grantee, a landlord and tenant, etc. *Id.*

■ Second, the covenant must touch and concern the land granted or demised. *Pelser*, 214 Minn. at 285, 8 N.W.2d at 39. In order to touch and concern the land, a covenant must "inhere

in or be attached to the land, or relate to its mode of occupation or enjoyment." *Kettle River*, 41 Minn. at 471, 43 N.W. at 473. The main distinction drawn in deciding whether a covenant runs with the land is between agreements that relate to the "occupation or enjoyment of land" and agreements that relate to the "collateral and personal obligation of the grantor or lessor." *Pelser*, 214 Minn. at 285, 8 N.W.2d at 39. The former run with the land; the latter do not. *See Vawter v. Crafts*, 41 Minn. 14, 16, 42 N.W. 483, 484 (1889).

■ Third, the liability or right that runs with the land must be assignable, and must have validly passed from the assignor of the land to the assignee. *Sjoblom v. Mark*, 103 Minn. 193, 195, 114 N.W. 746, 747 (1908). As part of this requirement, "it must also be the intent of the covenanting parties that the covenant run with the land, that is, that their successors or assigns will be bound by the terms of the covenant." *In re Turners Crossroad Dev. Co.*, 277 N.W.2d 364, 369 (Minn.1979). Thus, to create a covenant that runs with the land, there must be: (1) privity of estate; (2) a covenant that touches and concerns the land; and (3) the ability and fact of assignment.

■ We conclude that a covenant that satisfies the three criteria necessary to run with the land is a right or privilege that belongs or appertains to the real property of the tax parcel within the meaning of Minn.Stat. § 272.03, subd. 1. Specifically, a covenant that runs with the land is a contractual obligation with certain real characteristics, such that it attaches to land rather than constitutes a personal obligation. *Pelser*, 214 Minn. at 285, 8 N.W.2d at 39. The leasehold interest in this case satisfies the three criteria, and therefore is a right or privilege that belongs or appertains to the land.

First, there is privity of estate between the parties to the original covenant. *See Kettle River*, 41 Minn. at 471, 43 N.W. at 473. The lease was signed by Dayton's and Equitable, the then-owner of Rosedale, in 1992. Dayton's thereby received the right to exclusively use part of Parcel 0005, which was then owned by Equitable, as a fully integrated part of the Dayton's department store. The rights created and held by the leasehold interest in Parcel 0005 create privity because the rights concern the lands or estate of Federated, the property owner of Parcel 0004. *See id.* at 471, 43 N.W. at 473. These rights appear to continue unchanged, simply transferred to and held by different entities.

Second, we examine whether the leasehold interest conveyed by the owner (Equitable) of Parcel 0005 (the basement space) to the owner of Parcel 0004 (Dayton's and its successor Federated) is a covenant that touches or concerns the land (Parcel 0004). In the lease, Equitable, as the owner of Parcel 0005, conveyed to Dayton's, as the owner of Parcel 0004, the exclusive right of possession of 45,436 square feet of administrative/retail space that is automatically renewable for 100 years for nominal rent in exchange for a promise not to open a Dayton's store at the Mall of America, and that Dayton's or its successor continue to operate the basement space "as a fashion oriented retail department store under the name required." The covenant required Dayton's, or its successor, to occupy the space upon commencement of the lease, and to "continuously conduct in 100% of the Premises only the business expressly set forth." The covenant gave Equitable, as the owner of the Mall and Parcel 0005, the right to transfer its obligations to its successors in interest subject to the covenants in the lease. Federated assumed all of the covenants in the lease when it accepted an assignment of the lease.

We conclude that the leasehold interest of Federated, as owner of Parcel 0004, in Parcel 0005, touches and concerns the land (Parcel 0004), and is not a personal obligation. The requirements of the covenant relate specifically to the right of the owner of Parcel 0004 to use the leased basement space as a department store. Specifically, Federated must use the space as part of its department store, which is a physical requirement and a use restriction, consistent with a restriction that runs with the land. The lease also binds the Mall and its successors in interests by making them subject to the use restrictions for the duration of the lease.[7]

The long-term and specified nature of the temporal restrictions in the lease also indicate that the covenant runs with the land. *See Haugen v. Peterson,* 400 N.W.2d 723, 726 (Minn.1987) (noting that restrictions on land lack practical limitation unless property owners approve the removal of a restrictive covenant); *see also Sweeney v. Landings Ass'n, Inc.,* 277 Ga. 761, 595 S.E.2d 74, 75 (2004) (holding that

---

7. Other jurisdictions have also concluded that restrictions on use of space are considered to run with the land. *See, e.g., Crown Point Partners LLC v. Crown Point Plan Comm'n,* 275 F.R.D. 279, 281 (N.D.Ind.2011) (holding that requirements to change or use land in a certain way are generally held to touch and concern the land); *Winn–Dixie Stores, Inc. v. Dolgencorp, Inc.,* 964 So.2d 261, 264 (Fla. Dist.Ct.App.2007) ("Florida courts have long enforced use restrictions in commercial leases as covenants running with the land."); *Cypress Gardens, Ltd. v. Platt,* 124 N.M. 472, 952 P.2d 467, 470 (N.M.Ct.App.1997) (holding that a covenant that calls for building a fence or refraining from doing so is a covenant that runs with the land); *Smalley v. Stowe Mountain Club, LLC,* 190 Vt. 53, 25 A.3d 539, 543 (2011) (holding that conditions imposed to use a high-end shopping center in a particular manner were covenants that run with the land).

a covenant that provides for its automatic renewal is enforceable as a matter of law); *City of Bowie v. Mie Props., Inc.*, 398 Md. 657, 922 A.2d 509, 528 (2007) (holding that covenants that specify a duration should be enforced by courts to hold parties to their bargain).

Third, the covenant must be assignable, and have validly passed to the assignee. *Sjoblom*, 103 Minn. at 195, 114 N.W. at 747. Here, the lease is assignable. Additionally, the lease establishes standards that must be met for the lease to be validly assigned. It is also clear that the parties intended the lease to bind successors and assigns. Furthermore, the record indicates that the lease was validly assigned to the May Company, which bought Dayton's in 2004, and then validly assigned to Federated when Federated merged with May in 2006.

Federated argues that only easements, and not leases, contribute value from one parcel to another taxable parcel.[8] The form of the agreement, however, is less relevant than the content of the agreement and rights assigned. Moreover, covenants may be equivalent to an easement. *Kettle River*, 41 Minn. at 472, 43 N.W. at 474 ("In some cases covenants in respect to lands are construed as equivalent to the grant of an easement or servitude, and as such held to attach to the land, and run with it regardless of change of ownership.").

Finally, we examine whether Parcel 0004's leasehold right to use the basement space of Parcel 0005 affected the fair market value of Parcel 0004. Section 273.12 provides that it is the duty of the assessor in valuing lands "to consider and give due weight to every element and factor affecting the market value...." In *Alvin v. Johnson*, we considered whether a valid tax deed executed by the State extinguished a roadway easement that burdened the Nordquist property and benefitted the Alvin property. 241 Minn. 257, 63 N.W.2d 22 (1954). We held that the tax deed did not extinguish the easement. *Id.* at 262, 63 N.W.2d at 25. We reasoned, in part, that "it is the duty of the assessor to take into consideration every proper element and factor affecting such valuation...."[9] *Id.* Because easements affect the value of the benefitted and burdened property, we concluded that easements are part of the property rights assessed and therefore not extinguished by the tax deed. *Id.* at 263, 63 N.W.2d at 27.

Similarly, leasehold rights that benefit the property and burden an adjacent property are a factor that affects market value of both properties. *See Shaber*, 30 Minn. at 183, 14 N.W. at 875 ("[W]ith reference to the subject of the covenant, it is sufficient that it be for something to be done, or refrained from, about, touching, con-

---

8. Federated argues that the value of any part of Parcel 0005 cannot be added to Parcel 0004 because the parties did not follow the statutorily-enumerated process for consolidating tax parcels. But Federated concedes that the right to use the leased basement space was validly assigned to it, and the benefits from assignment cannot be separated from the burdens of assignment when determining whether they run with the land. *See Turners Crossroad Dev.*, 277 N.W.2d at 370 (discussing how separating the benefits and burdens of assignments contravenes the public policy of covenant rules). Additionally, the tax parcels at issue are not eligible for consolidation;

they are owned by different parties (Federated owns Parcel 0004, and the Mall owns Parcel 0005). *See* Minn.Stat. § 272.46, subd. 2 (2010) (describing the process for consolidating tax parcels for property tax purposes for "contiguous parcels to which the applicants hold title"). Despite Federated's arguments, the only question here is whether the right to use part of Parcel 0005 runs with Parcel 0004, and we conclude that it does.

9. The Legislature has formalized this duty of the assessor. *See* Minn.Stat. § 273.12.

cerning, or affecting the covenantee's land, (though not upon it,) if the thing covenanted for be for the benefit of the same, or tend to increase its value in the hands of the holder."); *see also Meritex Enters., Inc. v. Cnty. of Ramsey*, No. CX–06–4506, 2009 WL 2366285, at *8 (Minn. Tax Ct. July 24, 2009). Consequently, the leasehold rights of Parcel 0004 to use the basement space—and to do so for nominal rent in functional perpetuity—may affect the value of Parcel 0004, and tend to increase its value by adding over 45,000 square feet to the store for retail and administrative use that would otherwise be unavailable. The answer to the value question must be determined by the tax court on remand.

In summary, we conclude that Parcel 0004's leasehold interest to the exclusive use of the basement space of Parcel 0005 is an interest in real property that satisfies the criteria of a covenant that runs with the land, and therefore is a right or privilege that belongs or appertains to the land within the meaning of Minn.Stat. § 272.03, subd. 1. Consequently, its contributory value as an integrated part of the department store is properly included in assessing all factors that contribute to the value of the tax parcel on appeal. *See McLaughlin v. Minn. Loan & Trust Co.*, 192 Minn. 203, 207, 255 N.W. 839, 840–41 (1934) ("An assignee takes all the interest of the assignor in the thing assigned, whether in possession or expectancy; but he takes it subject to all equities to which the original party is subject, and must therefore perform all covenants which are annexed to the estate so long as he is in possession." (internal quotation marks omitted)). Accordingly, we reverse and remand to the tax court for revaluation and recalculation of the property value of Parcel 0004 to include the leasehold interest of Parcel 0005 in the determination of the fair mar-

ket value of the real property of Parcel 0004 as the tax parcel on appeal.

Reversed and remanded.

